HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RODERICK DEMMINGS,

          Plaintiff,

   v.

PACIFIC MARITIME ASSOCIATION, et al.,

          Defendants.

CASE NO. C13-5737 RAJ

ORDER

    This matter comes before the court on Rule 12(c) motions by defendants Pacific Maritime Association ("PMA"), International Longshore and Warehouse Union Local 19 ("ILWU"), and ILWU-PMA Benefit Plans Office (the "Plan"). Dkt. # 45; # 47 & # 58-1[1]; # 51.

    In his second amended complaint ("SAC"), plaintiff Roderick Demmings alleges that defendants have engaged in disability discrimination and retaliation under the Washington Law against Discrimination ("WLAD") and the Americans with Disability

---

[1] ILWU filed a praecipe to provide the court with the corrected motion to correct a few citations to the record. Dkt. # 58. The court accepts the corrected motion, and will only cite to the corrected motion for the balance of the order. Dkt. # 58-1.

ORDER- 1

Act ("ADA") because "Defendants have allowed the 14-99 Program to be administered in a discriminatory manner resulting in the denial of services and reinstatement." Dkt. # 41 (SAC) at 6:5-10.  Plaintiff also alleges that defendants breached the duty of fair representation and the collective bargaining agreement ("CBA").  *Id.* at 6:10-14.  The factual allegations supporting these claims (Dkt. # 41 (SAC) at 2:16-5:14) involve a series of events that took place from 2006 through September 2010 that were the basis of another case plaintiff filed against PMA and ILWU, and that this court dismissed with prejudice on a number of grounds.  Case No. C11-1864 ("*Demmings 1*"), Dkt. ## 40, 119, 120.[2]  With respect to the new allegations, plaintiff alleges that in November and December 2013, defendants refused to respond to plaintiff's reapplication into the 14-99 Alcohol and Drug Recovery Program.  Dkt. # 41 at 5:19-6:3.

**A. PMA & ILWU**

PMA and ILWU move to dismiss the case under Rule 12(c) based on res judicata.[3]  Dkt. # 45 at 4-7; Dkt. # 58-1 at 5-8.  PMA and ILWU also move to dismiss plaintiff's claims based on his renewed effort to apply for reinstatement into the 14-99 program in 2013.  Dkt. # 45 at 7; Dkt. # 58-1 at 9-10.

In opposition, plaintiff concedes that his claims are only based on his attempt to re-apply for the 14-99 program in 2013, not the 2006 through 2010 conduct that was the subject of *Demmings 1*.  Dkt. # 49 (Opp'n) at 2 (only addressing 2013 allegations in

---

[2] In *Demmings 1*, plaintiff alleged claims against PMA and ILWU for disability discrimination under the ADA and the WLAD based on the same conduct that occurred from 2006 through 2010, including discrimination in their failure to reinstate him through the 14-99 program in 2010, retaliation under the WLAD based on his deregistration in 2008, as well as breach of the duty of fair representation and breach of CBA.  *Demmings 1*, Case No. C11-1864, Dkt. # 8; # 40 at 1-2, 9.

[3] Although PMA references collateral estoppel, or issue preclusion, it has not provided the court with any legal authority or analysis supporting any purported argument regarding collateral estoppel.  Far from "semantics and label[s]" (Dkt. # 45 at 4) collateral estoppel has a different legal standard than res judicata.  The court has disregarded PMA's reference to collateral estoppel because it has not provided any legal authority or analysis in that regard.

ORDER- 2

arguing that PMA is incorrect that plaintiff brought the same claims based on the same facts that are precluded); *see* Local Rules W.D. Wash. CR 7(b)(2)("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

Since plaintiff concedes that his claims are only based on the 2013 allegations, and not the conduct from 2006 to 2010 that was the subject of *Demmings 1*, the court has only addressed plaintiff's claims with respect to plaintiff's attempt to be reinstated to the 14-99 program in 2013.[4]

Under Rule 12(c), after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. Proc. 12(c). Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle plaintiff to a legal remedy. *Id.*

PMA and ILWU argue that plaintiff cannot revive a reinstatement claim that has already been decided against him by asking for reinstatement again. Dkt. # 45 at 7 & # 58-1 at 9-10 (citing *Collins v. United Air Lines, Inc.*, 514 F.2d 59 (9th Cir. 1975)).

In *Collins*, a flight attendant brought suit against her former employer for its failure to rehire her after her initial termination, but she failed to file a union grievance or complaint with the Equal Employment Opportunity Commission ("EEOC") or applicable

---

[4] The court notes that even if plaintiff relied on any of the alleged conduct from 2006 to 2010 that formed the basis of his claims in *Demmings 1*, the claims would be barred by res judicata, or claim preclusion, which prohibits lawsuits on any claims that were raised or could have been raised in a prior action between the same parties that was decided on a final judgment on the merits. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

state agency. 514 F.2d at 595. Over four years after her discharge, Collins sought reinstatement and was refused. *Id.* She then filed an EEOC complaint, claiming that it was timely because the alleged violation was a continuing one. The Ninth Circuit held that a failure to reinstate after an alleged discriminatory firing did not constitute a new and separate discriminatory act or somehow render the initial violation, if any, a continuing one. *Id.* at 596. Rather, the court held that, in this context, a request for reinstatement is wholly different from a new application for employment in that it seeks to redress the original termination. *Id.* The court reasoned that a "discharged employee who seeks to be reinstated is really litigating the unfairness of this original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer." *Id.*

More recently, the Ninth Circuit distinguished *Collins* where "new elements of unfairness, not existing at the time of the original violation, attached to denial of re-employment." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1060 (9th Cir. 2006). In *Josephs*, the new elements of unfairness that plaintiff asserted and the jury found existed was that defendant's denial of reinstatement was based on the perception that he was mentally ill. *Id.*

In *Demmings 1*, plaintiff alleged that he was "de-registered" or terminated in September 2008 for being unavailable to work during a period of his incarceration. Case No. C11-1864, Dkt. # 8 (SAC) ¶¶ 10, 12. Sometime in 2010, Mr. Demmings requested reinstatement through a drug and alcohol recovery program (14-99 program). *Id.* ¶ 15. When Mr. Demmings was not accepted into the 14-99 program, he filed charges with the EEOC alleging disability discrimination and received a right to sue letter before filing the *Demmings 1* lawsuit on November 7, 2011 ("Reinstatement Claim"). *Id.*, Dkt. # 40 (Ord. Granting 12(b)(6) Mot.) at 4. This court dismissed plaintiff's Reinstatement Claim because the 14-99 program required that the deregistration be caused by drug or alcohol dependency, and, thus, every individual who was re-registered through the 14-99

program presumably shared the same protected group as plaintiff: disability based on drug or alcohol dependency. *Id.* at 7-8; *see Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002) (fourth element in prima facie case of disparate treatment employment discrimination requires showing that similarly situated employees not in plaintiff's protected class received more favorable treatment); *Davis v. W. One Auto. Group*, 140 Wn. App. 449, 459, 166 P.3d 807 (2007) (prima facie case of disparate treatment discrimination requires showing, among other things, that employer treated employee less favorably in terms or conditions of employment than similarly situated, nonprotected employee).

In 2013, Mr. Demmings again requested reinstatement to the 14-99 program, but he has not alleged any new elements of unfairness that did not exist at the time of the denial of the initial reinstatement request. *Josephs*, 443 F.3d at 1060. For instance, plaintiff has not alleged whether the 14-99 program still requires that the original deregistration be caused by alcohol or drug dependency, or whether the failure to respond to his application for reinstatement was because of his alcohol or drug dependency, or some other reason. Rather, the court finds that Mr. Demmings, who was de-registered and seeks to be reinstated, is really litigating the unfairness of his original deregistration because only if the original deregistration was because of his alcohol or drug dependency is he entitled to be reinstated in the 14-99 program. *See Collins*, 514 F.2d at 596 ("discharged employee who seeks to be reinstated is really litigating the unfairness of this original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer.").

Accordingly, the court GRANTS PMA's and ILWU's Rule 12(c) motions. Dkt. ## 45 & 47.

**B.  The Plan**

The Plan moves to dismiss the case because (1) plaintiff fails to state a claim upon which relief may be granted; (2) plaintiff's claims are time-barred; and (3) plaintiff's

claims are barred by collateral estoppel. Dkt. # 51 at 6-12. Plaintiff has not provided any substantive argument addressing the Plan's motion. Dkt. # 56; *see* Local Rules W.D. Wash. CR 7(b)(2)("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). However, plaintiff relies, in part, on his opposition to PMA's motion in which he concedes that he is only relying on his request for reinstatement in 2013 to the 14-99 program.[5] Dkt. # 56 at 1; # 49 at 2-3.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). However, the complaint must indicate more than mere speculation of a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Additionally, the court is not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). This court holds the pleadings of *pro se*

---

[5] Since plaintiff concedes that his claims against the Plan rely on the conduct alleged to have occurred in 2013, the court has not addressed the prior allegations.

ORDER- 6

complainants to less stringent standards than those of licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, every complainant must demonstrate some claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). If the court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

The court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, where documents are referenced extensively in the complaint, form the basis of plaintiffs' claim, or are subject to judicial notice, the court may consider those documents in the context of a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003). The court may take judicial notice of facts not reasonably subject to dispute because they are generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Documents that are filed with the courts and are a matter of public record are exactly such facts that are subject to judicial notice. However, the truth of factual matters asserted therein are not properly subject to judicial notice.

> a. Breach of Duty of Fair Representation and CBA Claim

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983). "Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Id.* "Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the agreement." *Id.* at 164. The Supreme Court has recognized that "this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* "In such an instance,

an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* "Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." *Id.* These two claims are inextricably interdependent, and to prevail against either the employer or union, the employee must show that his discharge was contrary to the contract and that the union breached its duty. *Id.* at 165-66. The employee may sue the employer, the union, or both, but the case he must prove is the same regardless of which one he sues. *Id.* at 166. Thus, such a claim is a hybrid §301/fair representation claim amounting to a direct challenge to the private settlement of disputes under the CBA. *Id.*

Here, plaintiff has not alleged any facts that would demonstrate that the Plan was either his employer or his union.[6] *See* Dkt. # 41 (SAC). Accordingly, plaintiff's hybrid Section 301 claim fails as a matter of law.

     b. *Disability Discrimination and Retaliation under the ADA and the WLAD*

Title I of the ADA provides that no "covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2).

---

[6] Although it appears that the Plan is a welfare benefit plan created under the authority of ERISA, 29 U.S.C. § 1002(1) & (3), the Plan has not provided the court with any facts subject to judicial notice to allow the court to make such a finding.

ORDER- 8

Similarly, the WLAD prohibits employers, labor unions, and employment agencies from discriminating against individuals based on any sensory, mental, or physical disability, among other reasons. RCW 49.60.180-200.

Here, plaintiff has not alleged any facts that would demonstrate that the Plan was his employer, an employment agency, a labor organization or a joint labor-management committee. Dkt. # 41 (SAC). Accordingly, plaintiff's ADA and WLAD claims against the Plan fail as a matter of law.

**C. Conclusion**

For all the foregoing reasons, the court GRANTS PMA's and ILWU's Rule 12(c) motion, as well as the Plan's Rule 12(b)(6) motion to dismiss. Dkt. # 45, # 47, # 51. Since plaintiff is proceeding *pro se*, the court will allow plaintiff one opportunity to amend his complaint to allege sufficient facts with respect to the 2013 allegations as to each defendant. If plaintiff files a third amended complaint, he may only refer to pre-2013 conduct for the purpose of background information as is necessary to provide context, and he must make clear which factual allegations support his claims as to each defendant. If plaintiff chooses to file a third amended complaint, he must do so within twenty-one days of this order.[7]

Given that it appears unlikely to the court that plaintiff will be able to plausibly allege viable claims against each defendant, the court finds good cause to GRANT defendants' motions to stay and/or for protective order to STAY discovery until the court has sufficient time to resolve any additional challenges to plaintiff's third amended complaint. Dkt. ## 53, 60, 62. *See* Fed. R. Civ. Proc. 26(c)(1)(A); *Little v. City of Seattle*, 863 F.2d 681, 685 (district courts have wide discretion in controlling discovery); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (court may stay discovery when it is

---

[7] If plaintiff does not file an amended complaint within twenty-one days of this order, defendants shall provide notice to the court within thirty days of this order so that the court may enter judgment.

convinced that plaintiff will be unable to state claim for relief). The stay of discovery furthers the goal of efficiency for the court and litigants until the court can determine whether plaintiff can state a claim for relief. *Little*, 863 F.2d at 685.

Additionally, to the extent that defendants intend to file any motions in the future, the court ORDERS defendants to meet and confer prior to filing any motion and to file a joint motion or joinder where they intend to make the same arguments.[8] Finally, the court DENIES plaintiff's motion to compel and for sanctions without prejudice given the court's prior rulings. Dkt. # 69. To the extent that the court lifts the stay of discovery and the case proceeds, plaintiff may re-file his discovery motion pursuant to Local Civil Rule 37. Local Rules W.D. Wash. CR 37 (*available at* http://www.wawd.uscourts.gov/sites/wawd/files/LocalCivilRules1-31-2014.pdf).

Dated this 29th day of September, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[8] For instance, PMA and ILWU could have filed a joint Rule 12(c) motion given that they made many of the same arguments.

ORDER- 10